**18-2382**
**DEATH PENALTY CASE**

---

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

---

## MARVIN CHARLES GABRION II,
*Petitioner - Appellant*

v.

## UNITED STATES OF AMERICA,
*Respondent - Appellee*

## APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN SOUTHERN DIVISION

---

## REPLY BRIEF FOR PETITIONER-APPELLANT

---

Monica Foster
Jean E. Giles
Joseph M. Cleary
Indiana Federal Community
Defenders, Inc.
111 Monument Circle, Suite 3200
Indianapolis, Indiana 46204
Telephone: (317) 383-3520
Email: Monica_Foster@fd.org
Email: Jean_Giles@fd.org
Email: Joe_Cleary@fd.org

Scott Graham
SCOTT GRAHAM PLLC
1911 West Centre Avenue, Suite C
Portage, Michigan 49024
Telephone: (269) 327-0585
Email: sgraham@scottgrahampllc.com

*Counsel for Petitioner-Appellant*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ iii

ARGUMENT ..................................................................................................................1

I.      Introduction.........................................................................................................1

II.     Nothing in the government's response genuinely calls into question
        whether Gabrion has satisfied this Court's standards for an evidentiary
        hearing and discovery .......................................................................................1

III.    Contrary to the government's assertions, Gabrion made specific
        allegations, and adduced evidence, as to each of the four claims at issue
        in this appeal ...................................................................................................10

        A.      Gabrion adduced evidence that trial counsel was ineffective in
                the guilt phase for failure to obtain funding, failure to investigate
                the government's case, and failure to retain investigative services,
                and made specific requests for discovery and a hearing to further
                factually support this claim ..............................................................11

        B.      Gabrion adduced evidence that trial counsel was ineffective in its
                penalty-phase investigation and presentation, and made specific
                requests for discovery and a hearing to further factually support
                this claim .........................................................................................17

        C.      Gabrion adduced evidence that he was deprived of his right to
                conflict-free counsel and made specific requests for discovery
                and a hearing to further factually support this claim .........................21

        D.      Gabrion adduced evidence that the government presented false or
                misleading expert hair analysis, violating *Brady*, and made specific
                requests to further factually develop this claim ................................25

IV.     Gabrion's request that this Court assign a new judge on remand is not a
        separate claim or issue on which a COA is required; rather, reassignment
        is a remedy necessary to ensure that Gabrion receives due process ..............27

V.    This Court's standard for an evidentiary hearing and discovery is light even in non-capital cases, and allowing factual development is especially critical in death penalty cases ........................................................34

CONCLUSION ..................................................................................................35

CERTIFICATE OF COMPLIANCE ....................................................................36

CERTIFICATE OF SERVICE ............................................................................37

PETITIONER-APPELLANT'S DESIGNATION OF RECORD ...........................38

# TABLE OF AUTHORITIES

## <u>CASES</u>

*Arredondo v. United States*, 178 F.3d 778 (6th Cir. 1999)........................................5

*Atkins v. Virginia*, 536 U.S. 304 (2002).................................................................8

*Bigelow v. Haviland*, 576 F.3d 284 (6th Cir. 2009) .................................. 15, 17, 20

*Bigelow v. Williams*, 367 F.3d 562 (6th Cir. 2004) ...................................................16

*Bracy v. Gramley*, 520 U.S. 899 (1997) ...............................................................6

*Brady v. Maryland*, 373 U.S. 83 (1963) .................................................................25

*Campbell v. United States*, 686 F.3d 353 (6th Cir. 2012) ..................... 1, 25, 27, 30

*Cornell v. United States*, 472 F. App'x 352 (6th Cir. 2012) ........................... passim

*Fontaine v. United States*, 411 U.S. 213 (1973) ........................................................2

*Giglio v. United States*, 405 U.S. 150 (1972) ........................................................26

*Griffin v. United States*, 330 F.3d 733 (6th Cir. 2003) ........................................2, 30

*Huff v. United States*, 734 F.3d 600 (6th Cir. 2013) ..............................................1, 30

*In re Webster*, 605 F.3d 256 (5th Cir. 2010)...........................................................8

*Johnson v. United States*, 860 F. Supp. 2d 663 (N.D. Iowa 2012)...........................6

*Johnson v. Zerbst*, 304 U.S. 458 (1938) ................................................................13

*Ketcham v. City of Mount Vernon*, 992 F.3d 144 (2d Cir. 2021) ...........................27

*Machibroda v. United States*, 368 U.S. 487 (1962).............................................2, 30

*MacLloyd v. United States*, 684 F. App'x 555 (6th Cir. 2017) ...............................2

*Martin v. United States*, 889 F.3d 827 (6th Cir. 2018)............................... 1, 3, 4, 20

*Napue v. Illinois*, 360 U.S. 264 (1959) ......................................................... 25, 26

*Pola v. United States*, 778 F.3d 525 (6th Cir. 2015) ...........................................5, 20

*Rompilla v. Beard*, 545 U.S. 374 (2005) .............................................................20

*Rorrer v. City of Stow*, 743 F.3d 1025 (6th Cir. 2014) ..................................... 28, 33

*Smith v. United States*, 348 F.3d 545 (6th Cir. 2003)........................................2, 30

*Thomas v. United States*, 849 F.3d 669 (6th Cir. 2017) .........................................4

*Thomas v. United States*, Cv. No. 2:03–cv–02416–JPM–tmp, 2015
WL 5076969 (W.D. Tenn. Aug. 27, 2015)..................................................................4

*United States v. Abney*, 957 F.3d 241 (D.C. Cir. 2020)..........................................27

*United States v. Ashimi*, 932 F.2d 643 (7th Cir. 1991)..............................................2

*United States v. Barrett*, 985 F.3d 1203 (10th Cir. 2021) .......................................5

*United States v. Butler*, 955 F.3d 1052 (D.C. Cir. 2020)................................... 25, 26

*United States v. Gabrion*, 719 F.3d 511 (6th Cir. 2013) .........................................32

*United States v. Munoz*, 605 F.3d 359 (6th Cir. 2010) ...........................................16

*United States v. Olano*, 507 U.S. 725 (1993) .......................................................13

*United States v. Rodriguez*, Criminal No. 2:04-cr-55 (D.N.D. Sept. 3, 2021) ..........6

*United States v. Webster*, 392 F.3d 787 (5th Cir. 2004) .................................. 6, 7, 8

*United States v. Wolff*, 127 F.3d 84 (D.C. Cir. 1997)..............................................27

*Webster v. Daniels*, 784 F.3d 1123 (7th Cir. 2015)...............................................7, 8

*Webster v. Lockett*, Cause No. 2:12-cv-86-WTL-MJD, 2019 WL 2514833
(S.D. Ind. June 18, 2019) ................................................................7, 8

*Webster v. Watson*, 975 F.3d 667 (7th Cir. 2020) ....................................................9

## **STATUTES**

28 U.S.C. §2106 ....................................................................................28

28 U.S.C. §2253(c)(2)-(3) ........................................................................28

## **OTHER AUTHORITIES**

Hailey Fuchs, *Justice Dept. Executes Man for 1994 Kidnapping and
Murder*, N.Y. Times (Nov. 20, 2020)
https://www.nytimes.com/2020/11/20/us/ orlando-cordia-hall-execution.html........9

Lee Kovarsky, *The Trump Executions*, 100 Tex. L. Rev. __ (forthcoming 2022),
*available at* https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3891784 ............6

**ARGUMENT**

## I.     Introduction

There is no convincing argument that the district court's rejection of Gabrion's claims without an evidentiary hearing and discovery complies with this Court's binding precedent. The cases the government cites overwhelmingly support Gabrion's position, not the government's. Considering the evidence Gabrion presented in his §2255 motion and the detailed motions seeking to develop additional evidence through discovery and a hearing, there is no doubt that Gabrion has satisfied this Court's light standards for a hearing and discovery. At minimum, Gabrion is entitled to a remand for discovery and a hearing.

## II.    Nothing in the government's response genuinely calls into question whether Gabrion has satisfied this Court's standards for an evidentiary hearing and discovery.

The government has failed to establish that denial of Gabrion's §2255 motion without a hearing and discovery was proper. The government cannot escape the fact that this Court consistently remands §2255 cases for evidentiary hearings while reiterating the relatively low standard for a hearing, even in cases where much less than life and death is at stake. *See, e.g.*, *Martin v. United States*, 889 F.3d 827, 832 (6th Cir. 2018); *Huff v. United States*, 734 F.3d 600, 602 (6th Cir. 2013); *Campbell v. United States*, 686 F.3d 353, 360 (6th Cir. 2012); *Valentine v. United States*, 488 F.3d 325, 332-34 (6th Cir. 2007); *Smith v. United*

1

*States*, 348 F.3d 545, 548, 550-51 (6th Cir. 2003); *Griffin v. United States*, 330 F.3d 733, 739 (6th Cir. 2003); *MacLloyd v. United States*, 684 F. App'x 555, 559 (6th Cir. 2017) (internal record citation omitted) (citing *Machibroda v. United States*, 368 U.S. 487, 495 (1962)) (remanding for an evidentiary hearing, stating "[t[he district court relied on this court's rejection of ineffective assistance claims 'that rest upon conclusory, unsupported allegations of counsel's deficient performance.' This, however, would be a proper inquiry for the district court to make after an evidentiary hearing, having considered not only the pleading and the affidavits, but the whole of the testimony.").[1] These cases are consistent with Supreme Court precedent. *See Fontaine v. United States*, 411 U.S. 213, 215 (1973); *Machibroda*, 368 U.S. at 494-95 ("The statute requires a District Court to 'grant a prompt hearing' when such a motion is filed, and to 'determine the issues and make findings of fact and conclusions of law with respect thereto' unless 'the motion and the files and records of the case conclusively show that the prisoner is

---

[1] Perhaps this Court's relatively light standard is why the government attempts to justify the district court's reasoning by presenting a tortured interpretation of a Seventh Circuit case, *United States v. Ashimi*, 932 F.2d 643 (7th Cir. 1991). Contrary to the district court's (and now the government's) contention that *Ashimi* somehow justifies not holding a hearing, *Ashimi* simply points out that "evidence about the testimony of a putative witness must generally be presented *in the form of actual testimony by the witness* or on affidavit." *Id.* at 650 (emphasis added). *Actual testimony* occurs at a hearing. Gabrion thoroughly briefed the need for a hearing to the district court. *See* R. 89-1, Mem. in Support of Mot. for Hr'g, PageID 3810-45. *Ashimi* proves Gabrion's point.

entitled to no relief.' This was not a case where the issues raised by the motion were conclusively determined either by the motion itself or by the 'files and records' in the trial court. The factual allegations contained in the petitioner's motion and affidavit, and put in issue by the affidavit filed with the Government's response, related primarily to purported occurrences outside the courtroom and upon which the record could, therefore, cast no real light.") (footnote omitted).

The government points out that "[t]his is not a case like *Martin v. United States*, 889 F.3d 827 (6th Cir. 2018) where the government conceded that the movant's allegations, if true, would entitle him to relief." Resp. at 35 (citing *Martin*, 889 F.3d at 831; Gabrion Br. 11-14, 98). This statement is irrelevant, and also misleading.

First, when (as here) the law requires a hearing, the government's refusal to concede does not control. If the decisive question were whether the government agreed that a hearing is necessary, the courts would have no role to play. In reality, the government cannot render the courts impotent. Courts—not the government— decide whether to grant a hearing in §2255 proceedings, and courts unquestionably have the power to order a hearing over the government's objection. *See, e.g.*, *Valentine*, 488 F.3d at 333-34.

Second, although the government's statement implies that in *Martin* it agreed that the movant was entitled to an evidentiary hearing, that is not correct.

*See Martin*, 889 F.3d at 831 ("The Government does not contest that—if true—Martin's allegations would amount to ineffective assistance of counsel; *it argues that the district court properly denied Martin's § 2255 motion without an evidentiary hearing because Martin's allegations are inherently incredible and are contradicted by the record*.") (emphasis added).

Ultimately, contrary to the government's argument, the key takeaway from *Martin* is this Court's low standard for an evidentiary hearing—certainly not that the government's concession is necessary for this Court to remand for an evidentiary hearing. *See Martin*, 889 F.3d at 832.

The other cases the government cites are equally unavailing. The government cites *Thomas v. United States*, 849 F.3d 669 (6th Cir. 2017), for the proposition that "[b]ald assertions and conclusory allegations do not provide sufficient ground . . . to require an evidentiary hearing." *See* Resp. at 77 (alteration in original) (quoting *Thomas*, 849 F.3d at 681). The government, however, fails to mention that the district court held an evidentiary hearing on many of Thomas's claims. *See Thomas v. United States*, Cv. No. 2:03–cv–02416–JPM–tmp, 2015 WL 5076969, at *1 (W.D. Tenn. Aug. 27, 2015) ("An evidentiary hearing on that motion was held on October 12 and 13, 2011."). Similarly, in *Arredondo* this Court reversed a district court's denial of a §2255 motion and remanded for additional factual development. *See Arredondo v. United States*, 178 F.3d 778, 780 (6th Cir.

1999) ("We hold that the district court erred in refusing to hold an evidentiary hearing to address Arredondo's claim of ineffective assistance based on his lawyer's failure to challenge the conclusory attribution to him of more than one kilogram of heroin."). Likewise, in *Pola*, this Court remanded for an evidentiary hearing. *Pola v. United States*, 778 F.3d 525, 533 (6th Cir. 2015) ("The record before us is sparse . . . None of the reasons the district court offered justify denying Pola an evidentiary hearing."). In fact, none of the government's examples actually show that a hearing is unnecessary; instead, they underscore that this Court, consistent with Supreme Court precedent, places the utmost importance on hearings in §2255 proceedings.

Notably, this Court's precedent emphasizing the importance of hearings in §2255 proceedings comes from non-capital cases. In capital cases, proper factual development is a matter of life or death. For example, in *United States v. Barrett*, the district court initially denied the §2255 motion without a hearing, but the Tenth Circuit remanded the case for a hearing, and then granted relief following the hearing. *See United States v. Barrett*, 985 F.3d 1203, 1207 (10th Cir. 2021). In *Barrett*, as here, the government argued against an evidentiary hearing. *See United States v. Barrett*, 797 F.3d 1207, 1228 (10th Cir. 2015). Had the Tenth Circuit not remanded for a hearing after the district court denied it, trial counsel's

constitutionally deficient performance would not have been uncovered,[2] and

Barrett may have been wrongfully executed.[3]

As to discovery, this Court's standard for discovery is also not onerous, even in non-capital cases. The movant must show good cause. "Good cause" for discovery "is established 'where specific allegations . . . show reason to believe that [the movant] *may, if the facts are fully developed*, be able to demonstrate' entitlement to relief." *Cornell v. United States*, 472 F. App'x 352, 354 (6th Cir. 2012) (alterations in original) (emphasis added) (quoting *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997)).

The government emphasizes that "the rule does not authorize a 'fishing expedition.'" Resp. at 113 (quoting *United States v. Webster*, 392 F.3d 787, 802 (5th Cir. 2004)). True enough. But Gabrion is not on a fishing expedition—he has made specific discovery requests that explain the relevance of the documents and

---

[2] Similarly, in *Johnson v. United States*, the district court vacated the death sentence based on evidence adduced at a hearing that involved eighteen days of evidence, testimony of fifty-eight witnesses, and submission of many thousands of pages of documentary evidence. *See Johnson v. United States*, 860 F. Supp. 2d 663 (N.D. Iowa 2012). And in the last six months, another district court has vacated a death sentence, again based on evidence adduced at lengthy hearings. *See* Order Vacating Death Sent. and Granting New Sent'g Hr'g, Doc. 1149, *United States v. Rodriguez*, Criminal No. 2:04-cr-55 (D.N.D. Sept. 3, 2021).

[3] After 17 years without a federal execution, thirteen federal prisoners were executed between July 2020 and January 2021. *See generally* Lee Kovarsky, *The Trump Executions*, 100 Tex. L. Rev. __ (forthcoming 2022), *available at* https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3891784.

depositions sought. *See* R. 51-1, Br. in Support of Mot. for Disc., PageID 2530; R. 59, Br. in Support of Mot. to Conduct Deps., PageID 2565; R. 67, Am. Br. to Conduct Disc., PageID 2604.

Moreover, the case that, according to the government, exemplifies the prudence of affirming denial of a §2255 motion with no discovery—*United States v. Webster*—is the *antithesis* of such an example. *See* Resp. at 113 (quoting *United States v. Webster*, 392 F.3d at 802). After the Fifth Circuit's opinion that the government cites, Webster's death sentence was vacated because of documents diagnosing him as intellectually disabled (and thus constitutionally ineligible for the death penalty) that were uncovered after §2255 proceedings. *See Webster v. Daniels*, 784 F.3d 1123, 1132 (7th Cir. 2015) (en banc) (discussing procedural history and previously uncovered Social Security records); *Webster v. Lockett*, Cause No. 2:12-cv-86-WTL-MJD, 2019 WL 2514833, at *11 (S.D. Ind. June 18, 2019) (vacating death sentence).

More specifically, Social Security Administration records pre-dating the crime established that three Social Security Administration doctors had diagnosed Webster as intellectually disabled. *Webster v. Daniels*, 784 F.3d at 1133. The Social Security records thus undermined the government's argument that Webster was malingering intellectual disability to avoid the death penalty. *See id.* Of course, as the documents were Social Security Administration records, they had

been in the federal government's possession throughout trial and §2255 proceedings. Yet these records were not uncovered until four years after Webster's §2255 concluded—and after the government set an execution date for Webster. *See Webster v. Daniels*, 784 F.3d at 1132; *In re Webster*, 605 F.3d 256, 257 n.1 (5th Cir. 2010).

Webster's §2255 was, as the government here emphasized, denied without a hearing or discovery. *See* Resp. at 113; *United States v. Webster*, 392 F.3d at 802; *In re Webster*, 605 F.3d at 259 n.1 (Wiener, J., concurring) ("Although Webster's counsel requested these Social Security records long before his trial, they were only recently produced. And, when Webster sought additional discovery in connection with his first habeas petition, the district court denied his motion—just two days before the Supreme Court's landmark decision in *Atkins v. Virginia*, 536 U.S. 304 (2002)—and required that he file his petition within sixty days, i.e., less than two months after *Atkins* was decided and without the benefit of additional discovery."). The government fails to note that following the discovery of Webster's Social Security records after §2255 proceedings had concluded, a district judge granted discovery, including depositions of numerous witnesses, and held two evidentiary hearings. *See Webster v. Lockett*, 2019 WL 2514833, at *1-2. Only through this process of discovery and evidentiary hearings were the courts able to fully vet Webster's *ineligibility for the death penalty*. Without reasonable

process—that is, if the Fifth Circuit opinion the government relies on had been the final word—it is likely Webster would have been executed, in violation of the Constitution.[4] Thus, rather than providing an example of why there is no need for factual development in §2255 proceedings, Webster's case is actually a cautionary tale as to the dangers of prohibiting discovery and a hearing.

Moreover, throughout the post-§2255 litigation relating to Webster's Social Security records, federal prosecutors bemoaned that additional litigation was taking place after Webster's sentence appeared to be final. As a unanimous panel of the Seventh Circuit noted in its opinion affirming the district court's finding that Webster is intellectually disabled:

> There runs through the government's position on appeal a stream of frustration over Webster receiving relief in federal court in Indiana after years of proceedings that had seemed to reach finality in federal court in Texas. At one level the government's position is well-founded, for there is no question the litigation path has been long, defined by an unexpected turn, and laden with great investments of resources by all involved. At another level, though, the government's position is not well-received. . . . Remember the reason for the remand: the government, in particular the Social Security Administration, failed to produce documents pre-dating the murder showing that Webster was mentally retarded.

*Webster v. Watson*, 975 F.3d 667, 688 (7th Cir. 2020).

---

[4] Webster's codefendant Orlando Hall was executed on November 19, 2020. Hailey Fuchs, *Justice Dept. Executes Man for 1994 Kidnapping and Murder*, N.Y. Times (Nov. 20, 2020), https://www.nytimes.com/2020/11/20/us/orlando-cordia-hall-execution.html.

Now, after federal prosecutors spent years complaining about post-2255 litigation in *Webster*, which was prompted by the late disclosure of documents in the federal government's possession, here the government attempts to hold up *Webster* an example of why discovery in §2255 proceedings is unnecessary. But if there is a case out there that illustrates why factual development is unimportant in post-conviction federal death penalty cases, *Webster* is not it. The government's reliance on *Webster* to assure this Court that it should affirm denial of this §2255 without discovery or an evidentiary hearing is unnerving.

**III.   Contrary to the government's assertions, Gabrion made specific allegations, and adduced evidence, as to each of the four claims at issue in this appeal.**

As discussed in more detail in this section, Gabrion made specific factual allegations supporting each of the claims at issue in this appeal. Moreover, Gabrion made detailed requests for discovery and sought an evidentiary hearing to further develop these claims. In light of the evidence Gabrion presented as to each claim, and the additional evidence Gabrion sought to develop through discovery and a hearing, the district court erred by rejecting these claims, or at minimum it rejected them prematurely.

**A.** **Gabrion adduced evidence that trial counsel was ineffective in the guilt phase for failure to obtain funding, failure to investigate the government's case, and failure to retain investigative services, and made specific requests for discovery and a hearing to further factually support this claim.**

Gabrion put forward substantial evidence that his trial counsel was ineffective in the guilt phase, and further specified how discovery and an evidentiary hearing would allow him to prove his allegations.

As to the evidence Gabrion has already advanced, he submitted records from the Newaygo County court, which were readily available to trial counsel and established that Roach's testimony in the guilt phase of his case was false and misleading. R. 15-3, Docket Sheets, PageID 1033-1168; R. 15-4, Docket Sheets, PageID 1170-1314.[5] He submitted the affidavit of a pathologist, Dr. Spitz, who concluded that it was not possible to say whether Timmerman was alive when she was placed in Oxford Lake. R. 103-5, Spitz Aff. ¶7, PageID 4989. And he submitted letters that revealed the problems trial counsel was having securing funding for their investigation. *See* R. 16-7, 6/26/2000 letter Stebbins and Mitchell to Scoville, PageID 1524 ("Because we do not have approval from the Sixth Circuit our investigators and experts have not been paid, and consequently are not working on this case because of this lack of funding. . . .

---

[5] Docket sheets are also an attachment to the Amended §2255 Motion. *See generally* R. 100-1 through 100-3.

We are finding it impossible to investigate and prepare the case without the assistance of investigators and experts."); R. 16-8, 3/9/2001 letter Stebbins and Mitchell to Enslen, PageID 1528 ("We are concerned that once again our investigators are not being compensated and understandably are not willing to continue to devote the time necessary to complete the investigation on this case.").

The Government says that "Gabrion fails to identify any investigation that should have been undertaken that wasn't and that reasonably might have led to a different outcome in the guilt phase of the trial." Resp. at 51. That statement is patently false. In fact, Gabrion identified specific investigative tasks that should have been undertaken by trial counsel, and were undertaken by §2255 counsel and discussed in Gabrion's §2255 motion: reviewing Gabrion's Newaygo County court file; following up on the lead that Gabrion was required to have a payee for SSI benefits; uncovering witnesses who could have undermined Lloyd Westcomb's credibility, particularly in light of the fact that the government argued that Westcomb's testimony "all by itself proves to you the defendant is the killer," Tr. 1700; uncovering witnesses who would have undermined the government's timeline by establishing that Gabrion was at a campground on June 25, 1997; uncovering witnesses who would have undermined the government's theory that Gabrion used John Weeks to lure Timmerman from her home, and then killed

12

Weeks; uncovering a witness, Walter D. Hamilton, whose testimony would have impeached the testimony of Linda Coleman; uncovering Timmerman's motive to disappear, namely, that her probation officer ordered her to move from her father's home into a group home; following up on handwriting analysis which said Timmerman wrote letters saying she had started a new life; uncovering witnesses who saw Timmerman alive after she was supposedly abducted and never seen again; presenting credible evidence of alternative suspects, including David Gabrion and Eddie Start; and uncovering impeachment material against additional witnesses, including David Gabrion, Detective Richard Miller, and Nathan Brewster.[6]

---

[6] The government argues that some of Gabrion's "[a]rguments" about the specific problems with trial counsel's investigation are "waived." Resp. at 56 n.13. First, the government means forfeited, not waived. *See United States v. Olano*, 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)) ("Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the "intentional relinquishment or abandonment of a known right."). This is relevant because "[m]ere forfeiture, as opposed to waiver, does not extinguish an 'error.'" *Id.* More important, Gabrion did not forfeit any argument that his trial counsel was ineffective at the guilt phase because their investigation was inadequate. Gabrion's *argument* is that his trial counsel conducted an inadequate investigation in preparation for the guilt phase. His §2255 motion extensively detailed the specific mistakes his counsel made. This Court granted a COA to assess "whether trial counsel was ineffective at the guilt phase by failing to obtain funding, failing to investigate the government's case, and failing to retain investigative services." COA at 3. Gabrion's opening brief to this Court thus continued to argue that that trial counsel conducted an inadequate guilt-phase investigation, and included many examples in support of this argument. Some examples were discussed in more detail, others in less. But all examples were in service of the argument that trial counsel conducted an

The most important point at this stage, though, is that Gabrion repeatedly sought to further develop his claims, but the district court rejected his efforts at every turn. Gabrion asked for leave to depose witnesses who could have provided details about trial counsel's lapses and the leads upon which trial counsel should have followed up. *See* R. 58, Mot. to Conduct Deps., PageID 2563; R. 59, Br. in Support of Mot. to Conduct Deps., PageID 2565-77. Most notably, Gabrion asked to depose trial counsel and the investigator, whose testimony certainly could have filled in the details about whether there was additional investigation they would have completed but for lapses in funding or why they did not undertake certain investigative tasks.[7] *See* R. 59, Br. in Support of Mot. to Conduct Deps., PageID 2572-74. He also sought leave to depose Roach, *id.* at PageID 2575; some of the mental health experts who testified at trial, *id.* at PageID 2575-76; and the pathologist who testified (contrary to Gabrion's §2255 expert) that Timmerman was alive when she was placed in Oxford Lake, *id.* at PageID 2576. Gabrion also

---

inadequate guilt-phase investigation. Including some of the myriad examples of his trial counsel's investigative failures in a footnote does not forfeit the argument that his trial counsel's guilt-phase investigation was inadequate.

[7] The government points to the budget expenditures certified in Gabrion's case, which includes expert and investigative funding. *See* Resp. at 50. Mere monetary figures, however, do not reveal the impact that the documented funding delays had on Gabrion's representation during critical times in the case or explain why critical investigation was never done. Accordingly, a hearing, during which the district court can hear directly from trial counsel and investigators, is necessary.

asked for a hearing. *See* R. 89-1, Mem. in Support of Mot. for Hr'g, PageID 3824-25 (noting that "[t]rial counsel was unable to secure consistent funding for [their investigator] Hubbard and this resulted in an interruption in service for most of 2000. . . . The impact of the funding difficulties is outside the records and requires an evidentiary hearing," and also pointing out that, as to Gabrion's allegation that trial counsel were ineffective in failing to retain a pathologist, actually hearing from the pathologist whose affidavit Gabrion submitted was necessary to assess this claim).

In light of the information Gabrion has already put forward and his rejected efforts to further develop his claims, the cases the government cites undermine, rather than support, its position that Gabrion is not entitled to a hearing on his claim that his trial counsel was ineffective for failing to obtain funding, failing to investigate the government's case, and failing to retain investigative services. In many of the cases the government relied on for its argument that hearing was not required, a hearing was in fact held.

For example, the government points to *Bigelow v. Haviland*, 576 F.3d 284, 289 (6th Cir. 2009) as an example of a case where a petitioner provided sufficient details to prove his claim of ineffective assistance, apparently suggesting *Biglow* is an illuminating contrast to Gabrion's case. *See* Resp. at 51. The government fails to mention, however, that Petitioner Bigelow had an evidentiary hearing. *Bigelow*,

576 F.3d at 286. As such, this Court had the opportunity to evaluate his claims based on the evidence adduced at the hearing. *See id.* Indeed, "[i]n [Bigelow's] first appeal to [this Court], [the Court] reversed the district court's denial of the writ, *instructing it to hold an evidentiary hearing to determine whether Bigelow's trial counsel failed adequately to investigate this alibi defense*, particularly after a corroborating witness stepped forward a few days before the criminal trial." *Id.* (emphasis added) (citing *Bigelow v. Williams*, 367 F.3d 562, 565 (6th Cir. 2004)). Following the hearing, "[o]n remand, the district court determined that Bigelow was entitled to relief because his counsel had provided ineffective assistance in violation of the Sixth and Fourteenth Amendments, and it granted the writ." *Id.* This Court then affirmed the grant of the writ based on the evidence presented at the evidentiary hearing. *Id.* at 286, 288-89. Thus, *Bigelow* is not a contrast with Gabrion's case—it is yet another case supporting Gabrion's argument that his claims should not be dismissed without a hearing.

The government additionally cites *United States v. Munoz*, 605 F.3d 359, 379 (6th Cir. 2010), pointing out that this Court held that the "alleged failure to investigate and call character witnesses failed *Strickland* test because there was no reasonable probability that doing so would have affected the outcome of the trial." Resp. at 51-52. While Munoz ultimately did not prevail before this Court, the case reached this Court only after the district court held an evidentiary hearing. *Munoz*,

605 F.3d at 362 ("After an evidentiary hearing, the district court granted the motion, specifically grounding its new-trial grant on the violation of Munoz's Sixth Amendment right to effective assistance of counsel."). Accordingly, *Munoz*, like *Bigelow*, confirms the importance of hearings and demonstrates that what happened in Gabrion's case falls far below what due process requires.

Especially considering this Court's consistent emphasis on the importance of hearings and light standard for when a hearing is necessary, Gabrion adduced sufficient evidence to establish that he is entitled to a hearing. Gabrion is also entitled to discovery, as he made specific allegations showing that he at least *may* be able to demonstrate' entitlement to relief. *See Cornell*, 472 F. App'x at 354. Therefore, Gabrion is entitled to a hearing and discovery on his guilt-phase ineffective assistance claims.

**B.      Gabrion adduced evidence that trial counsel was ineffective in its penalty-phase investigation and presentation, and made specific requests for discovery and a hearing to further factually support this claim.**

Gabrion advanced substantial evidence that his trial counsel was ineffective in the penalty phase, and specified how discovery and an evidentiary hearing would allow him to prove his allegations.

As noted above, Gabrion submitted records from the Newaygo County court showing that Roach's testimony, which the government used to support two

aggravating factors, was false and misleading.[8] Additionally, Gabrion submitted

the trial mitigation specialist's abridged social history, which stated that it would

be updated with further information, along with an affidavit from the mitigation

specialist stating that the social history was not, in fact, updated. *See* R. 100-5,

Crates Aff. and Abridged Social History, PageID 4702-03, 4713. Additionally,

Gabrion submitted an exhaustive social history prepared by his §2255 team. *See* R.

103-1, Social History, PageID 4733-4883. The mitigation investigators who

prepared this social history submitted sworn affidavits affirming that each

statement in the Social History was supported by a document or witness. *See* R.

103-2, Waller Aff., PageID 4885-86; R. 103-3, Wilson Aff., PageID 4888-89.

---

[8] The government argues that, as to Gabrion's claim of penalty-phase ineffective assistance, "[t]he Chrystal Roach arguments are outside the scope of the certificate of appealability. The certificate this Court granted authorizes Gabrion to address whether counsel was ineffective in its mitigation investigation and presentation at the penalty phase; it does not authorize Gabrion to challenge his counsel's performance relating to aggravating evidence." Resp. at 72 (citing COA at 4). The COA authorizes Gabrion to address "whether trial counsel was ineffective in its mitigation investigation *and presentation at the penalty phase*." COA at 4 (emphasis added). Gabrion here is arguing that failure to counter Roach's demonstrably false testimony was an ineffective "presentation at the penalty phase." *See id.* Gabrion also has argued that his counsel was ineffective "in its mitigation investigation," *see id.*, for failure to oversee a complete and adequate social-history investigation, *see* Opening Br. at 28-32. But regardless of whether trial counsel failed to find the records to contradict Roach because of its ineffective mitigation investigation or for some other reason, like an inadequate guilt-phase investigation, the point is that failure to use these records to counter the government's arguments in the penalty phase meant that trial counsel's "presentation at the penalty phase" was constitutionally deficient. *See* COA at 4.

As to Gabrion's attempts to further develop his claims through discovery and a hearing, he sought leave to depose several witnesses whose testimony would have been crucial to his claim of ineffective assistance, including trial counsel and the mitigation specialist. *See* R. 58, Mot. to Conduct Deps., PageID 2563; R. 59, Br. in Support of Mot. to Conduct Deps., PageID 2572-74. Gabrion also sought leave for discovery to secure relevant documents, including, for example, his own Social Security records, which support the claim that counsel was ineffective in failing to litigate competency issues and may shed light on Gabrion's mental health. *See* R. 67 Am. Br. to Conduct Discovery, PageID 2610-11. (These records were not contained in trial counsel's file, though that file did contain memos detailing the importance of these records and the difficulties encountered attempting to procure them. Gabrion was granted Social Security disability prior to the homicide here and was additionally required to have a payee because of his disabilities. The Social Security Administration claims it gave the records to the government. Gabrion also asked for records that had been provided to government mental health evaluators that were not in the file.)

Of course, Gabrion also asked for a hearing, at which, for example, the witnesses who provided the information outlined in the social history could have testified. *See* R. 89-1, Mem. in Support of Mot. for Hr'g, PageID 3829 (noting that, "attached to the amended §2255 motion is the social history prepared by current

counsel's investigation which is incorporated here, as well as, the affidavits by the authors of the social history, Danielle Waller and Betsy Wilson. Ms. Waller and Ms. Wilson aver that each fact contained in their social history is supported by a document or witness. This exhibit, extensively corroborated by records created well before Ms. Timmerman's death and by persons with no motive to falsify or exaggerate, demonstrates the multi-generational mental illness and substance abuse issues that existed in movant's family.").

In light of the information Gabrion has already put forward, and his rejected efforts to further develop his claim, this Court's precedent establishes that Gabrion is entitled to a hearing and discovery. *Bigelow*, 576 F.3d 284, in particular, emphasizes the need for a hearing to evaluate claims of ineffective investigations, which in capital cases applies equally to the penalty phase as the guilt phase. *See Rompilla v. Beard*, 545 U.S. 374, 380-81 (2005). Along with *Bigelow*, cases like *Martin*, 889 F.3d at 831; *Pola*, 778 F.3d at 533; *Valentine*, 488 F.3d at 333-34; *Smith*, 348 F.3d at 553-54; and *MacLloyd*, 684 F. App'x at 559, underscore the importance of hearings in §2255 proceedings, and that the standard for when a hearing is necessary is "relatively light," *Smith*, 348 F.3d at 551. The facts Gabrion put forward in support of his claim of penalty-phase ineffective assistance satisfy this light standard for a hearing. *Cornell* establishes Gabrion's entitlement to discovery, as Gabrion made specific allegations showing that he at least *may* be

able to demonstrate entitlement to relief. *See Cornell*, 472 F. App'x at 354.

Therefore, Gabrion is entitled to a hearing and discovery on his penalty-phase ineffective assistance claims.

### C. Gabrion adduced evidence that he was deprived of his right to conflict-free counsel and made specific requests for discovery and a hearing to further factually support this claim.

Gabrion put forth evidence that Christopher Yates, who the government acknowledges had a conflict of interest, nonetheless participated in Gabrion's defense. The government concedes that "Yates provided research, logistical, and administrative support" to Gabrion's defense team. Resp. at 101. However, the government argues that Yates nevertheless "did not represent Gabrion." *See* Resp. at 106. Much of the government's argument relies on the fact that everyone knew that Yates had a conflict of interest and could not represent Gabrion.

At least arguably, this knowledge failed to keep Yates from impermissibly participating in Gabrion's defense. Gabrion has pointed to evidence that Yates visited Gabrion and consulted with him about his case, consulted with Gabrion's lawyers regarding motions strategy, and was involved in the search for Gabrion's social security disability records. *See, e.g.*, R. 16-5, 4/6/2001 letter Stebbins to Yates, PageID 1518-19 (explaining the motions Stebbins would like Yates to assist with); R. 119-1, Yates Dec., PageID 5292-94 (explaining his opinion that he did

21

not represent Gabrion, though he also explained the work he did on Gabrion's case, including visiting Gabrion).

In addition, Gabrion also pointed to enough evidence of an adverse effect to require discovery and a hearing. For one, Gabrion pointed to the fact that Joseph Lunsford and Yates have sworn to contradictory accounts of whether Yates suggested false facts to Lunsford regarding a critical damning fact against Gabrion. *See* R. 100-4, Lunsford Dec. ¶¶6-7, PageID 4700; R. 119-1, Yates Dec. ¶9, PageID 5294. Providing a false fact—in fact, one so damning that it was emphasized by the prosecution during penalty-phase closing arguments—certainly would constitute an adverse effect on performance. *See* R. 103-4, Stetler Dec. ¶134, PageID 4976.

In addition to presenting substantial evidence, including Lunsford's affidavit and letters revealing Yates' assistance to the trial team, Gabrion attempted to further develop his claims through discovery and a hearing. He sought discovery related to Yates, to further assess the extent of his participation in the case. *See, e.g.*, R. 67, Am. Br. to Conduct Discovery, PageID 2612. He also sought to depose Yates and trial counsel. R. 59, Br. in Support of Mot. to Conduct Deps., PageID 2574-75. Because the district court denied discovery, including permission to depose Yates and trial counsel, and denied a hearing, at which Yates, trial counsel, and Lunsford could have testified, the full extent of Yates' involvement in

Gabrion's case is not yet known, nor is whether Yates' or Lunsford's account of the facts should be credited.

The government argues that additional discovery would not shed light on this issue, because it is obvious that Yates did not represent Gabrion simply because he did not file an appearance, sign a pleading, or argue in court on Gabrion's behalf. Resp. at 106. The government's theory of representation—under which a public defender who drafted motions, strategized with and advised counsel of record, and conducted research, could simultaneously represent a witness against that defendant at trial simply because he did not appear in court or enter an appearance for a defendant—bears almost no resemblance to how the legal profession actually defines representation for purposes of avoiding conflicts.

For example, undersigned counsel sometimes consult with attorneys outside their offices.[9] These attorneys do not appear in court or sign pleadings in undersigned counsel's cases, but, having advised undersigned counsel about a case, they could not represent a co-defendant or adverse witness. The legions of junior associates at large law firms who work on cases without arguing in court or signing

---

[9] Indeed, the Administrative Office of the United States Courts created the Federal Capital Habeas Project for the purpose of consulting with attorneys handling capital §2255 proceedings, along with similar projects to assist with capital trials and capital §2254s. *See* https://capdefnet.org/. There is no exemption from basic conflict rules for these projects because the attorneys are engaged in consultation rather than direct representation.

pleadings still represent their firms' clients. Consulting experts, who do not testify, cannot work on behalf of multiple adverse parties. Most strikingly, the government's theory of representation would make conflicts impossible in situations where two parties are negotiating a deal, not litigating in court, but the conflict-of-interest rules of course apply to transactional attorneys.

To anyone operating under a reasonable understanding of what might constitute legal representation—that is, a definition that does not suggest that only signing pleadings or appearing in court can constitute representation or that nothing done behind the scenes can lead to a conflict of interest—Gabrion has at least alleged sufficient facts to entitle him to a hearing and discovery on this claim.

And of course, a hearing would be an ideal setting for determining whether Yates's assistance—which was outside the court's presence and purview—actually constituted representation. Indeed, in explaining why a hearing is necessary, Gabrion pointed out to the district court, "the Government argues movant has not shown that Mr. Yates provided any advice to counsel or movant nor has he shown that there was any adverse effect on counsel's performance. This is a factual dispute that can only be resolved via an evidentiary hearing." R. 89-1, Mem. in Support of Mot. for Hr'g, PageID 3823.

In sum, the record does not conclusively establish that Gabrion is not entitled to relief, and Gabrion made specific allegations showing that he at least

24

may be able to demonstrate entitlement to relief; as such, a hearing and discovery are required. *See Campbell*, 686 F.3d at 357; *Cornell*, 472 F. App'x at 354.

### D. Gabrion adduced evidence that the government presented false or misleading expert hair analysis, violating *Brady*, and made specific requests to further factually develop this claim.

Gabrion adduced evidence that at the time of trial, the government knew (or should have known) that the FBI's hair analysis was false or misleading, but failed to disclose that to defense counsel, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). This evidence was potentially important in establishing federal jurisdiction, a contested issue at trial and on appeal. And by definition, *Brady* evidence, in all its forms, is the kind that requires factual development, such as a hearing and discovery, because it was not part of the trial record as a result of the government failing to meet its disclosure obligations. As such, Gabrion is entitled to factual development on this claim, as he explained to the district court. *See* R. 89-1, Mem. in Support of Mot. for Hr'g, PageID 3843 ("*Brady* evidence by its nature requires a hearing because the crux of the claim is that the government suppressed material that was exculpatory. Suppressed evidence is clearly outside the record.").

The government argues that Gabrion pled this issue as a *Brady* claim, but in his opening brief, relied on the materiality standard in *United States v. Butler*, 955 F.3d 1052 (D.C. Cir. 2020), which applies the more lenient materiality standard from *Napue v. Illinois*, 360 U.S. 264 (1959). In *Butler*, a case that is also about the

FBI's flawed microscopic hair analysis, the D.C. Circuit explained that, "the government's introduction of false testimony is material if the evidence 'could in any reasonable likelihood have affected the judgment of the jury.'" *Butler*, 955 F.3d at 1058 (quoting *Giglio v. United States*, 405 U.S. 150, 154 (1972)) (citing *Napue*, 360 U.S. at 271). "So understood, the 'reasonable likelihood' test 'is quite easily satisfied.' . . . Indeed, we have described the reasonable-likelihood standard as establishing 'a veritable hair trigger for setting aside the conviction,' and as 'mandat[ing] a virtual automatic reversal of a criminal conviction.'" *Butler*, 955 F.3d at 1058 (second alteration in original) (internal citations omitted). But, the government argues, this "easily satisfied" standard does not apply to this claim because Gabrion pled it as a *Brady* claim, rather than a *Napue* claim.

This argument is unpersuasive. Butler's trial happened "[a]lmost fifty years ago"—long before Gabrion's trial. *Butler*, 955 F.3d at 1053. If the government knew that its hair analysis method was flawed almost fifty years ago, it certainly knew its hair analysis method was flawed as of Gabrion's 2002 trial. Thus, any argument that the government did not knowingly present false evidence—that this claim does not fall within the ambit of *Napue*—prizes form over function. This is inappropriate here because Gabrion was denied factual development. Discovery and a hearing would have allowed for appropriate factual development and, if necessary, amended pleading in the district court.

Most importantly, even if a more stringent materiality standard does apply, Gabrion has put forward enough evidence to at least require factual development and a hearing on this issue, which necessarily relies on evidence outside the record. *See Campbell*, 686 F.3d at 357; *Cornell*, 472 F. App'x at 354.

**IV.  Gabrion's request that this Court assign a new judge on remand is not a separate claim or issue on which a COA is required; rather, reassignment is a remedy necessary to ensure that Gabrion receives due process.**

Contrary to the government's assertion, Gabrion was not required to seek a COA on whether the case should be assigned to a new judge on remand in order to argue for reassignment. Assignment of a new judge is a remedy. *See, e.g.*, *Ketcham v. City of Mount Vernon*, 992 F.3d 144, 152 (2d Cir. 2021) ("Reassignment of a case 'is an extreme *remedy*, rarely imposed . . . but occasionally warranted, even in the absence of bias, to avoid an appearance of partiality.'") (alteration in original) (emphasis added); *United States v. Abney*, 957 F.3d 241, 254 (D.C. Cir. 2020) ("Reassignment is a *remedy* reserved for 'the unusual case.'") (emphasis added) (quoting *United States v. Wolff*, 127 F.3d 84, 88 (D.C. Cir. 1997)); *In re Gallaher*, 548 F.3d 713, 718 (9th Cir. 2008) ("[R]eassignment to a new judge is the appropriate *remedy*.") (emphasis added). A remedy is "[t]he means of enforcing a right or preventing or redressing a wrong," not a distinct claim. Remedy, *Black's Law Dictionary* (11th ed. 2019).

Certainly, a COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right" and "shall indicate which specific issue or issues satisfy the showing required." 28 U.S.C. §2253(c)(2)-(3). But §2253 does not require that a COA Application or the COA itself specify what remedies might be available for the issues that do proceed to appeal (nor does any other provision of the statutory scheme governing §2255 motions).

As such, reassignment to a new judge is a remedy this Court is empowered to impose. *See Rorrer v. City of Stow*, 743 F.3d 1025, 1049 (6th Cir. 2014) ("This Court possesses the power, under appropriate circumstances, to order the reassignment of a case on remand pursuant to 28 U.S.C. §2106."). The Court should exercise that power to ensure that Gabrion is afforded the process he is due.

Reassignment is necessary because, at every turn, Chief Judge Jonker refused to allow Gabrion to effectively make his case. For one, he failed to issue his rulings on Gabrion's request for discovery and a hearing until simultaneously denying Gabrion's §2255 motion, and his reasoning is essentially: Gabrion loses on the merits; therefore, he is not entitled to discovery or a hearing.

The government asserts that Chief Judge Jonker adopted the prior judge's approach "of waiting until the initial briefing was complete to determine whether discovery or a hearing was warranted because that is consistent with the Rules Governing 2255 Proceedings and the practice in the district." Resp. at 117.

28

However, the government's description is not accurate. First, Chief Judge Jonker did not merely wait until "initial briefing was complete" to issue a ruling; he delayed until his ruling on the merits—the end of Gabrion's entire litigation in the district court. Had Chief Judge Jonker issued a timely ruling—after initial briefing, but before his final decision on the merits—Gabrion could have responded to the ruling by, at minimum, asking for reconsideration and providing supplemental information. Instead, Gabrion's only recourse is with this Court. Moreover, Chief Judge Jonker's perfunctory reasoning fails to provide this Court with a complete record on which to evaluate his rulings on discovery.

Second, contrary to the government's assertion, the belated ruling is not consistent with the Rules Governing 2255 Proceedings or the practice in the district. Neither Rule 6 (Discovery) nor Rule 8 (Evidentiary Hearing) suggests that delaying a ruling on either discovery or an evidentiary hearing until after reaching a decision on the merits is the proper course of action. As to Rule 8, "review[ing] the answer" to determine whether a hearing is warranted, as Rule 8 requires, is entirely different than reaching a final decision on the merits before deciding whether a hearing is warranted. As to Rule 6, it does not instruct the district court to delay its decision on whether to issue discovery, and certainly does not suggest delaying until after reaching a final decision on the merits.

Notably, the government fails to cite a local rule or district court case that supports its assertion that Chief Judge Jonker's methods were consistent with the practice in the district. Even if the district court's failure to issue a timely ruling were consistent with the practice in the district, district court decisions are not binding on each other, and this Court's and the Supreme Court's precedent regarding hearings and discovery prohibit such a practice. *See, e.g.*, *Machibroda*, 368 U.S. at 494; *Huff*, 734 F.3d at 602; *Campbell*, 686 F.3d at 360; *Valentine*, 488 F.3d at 332-34; *Smith*, 348 F.3d at 548, 551; *Griffin*, 330 F.3d at 739; *MacLloyd*, 684 F. App'x at 558-59; *Cornell*, 472 F. App'x at 354.[10]

In attempting to excuse Chief Judge Jonker's refusal to grant Gabrion's discovery requests, the government also points to the fact that Gabrion's counsel had obtained and reviewed trial counsel and expert files in excess of 100,000 pages. Resp. at 118. This is a red herring. Those files were a necessary—but insufficient—part of the record needed to allow Gabrion to fully and fairly litigate his §2255 motion. By definition, §2255 proceedings are concerned with materials

---

[10] Perhaps the practice of collapsing the decision about whether a hearing and discovery are warranted into the merits inquiry could be appropriate in §2254 proceedings, where there has already been collateral review in state court and the federal court's review is much more limited. However, §2255 proceedings are initial-review collateral proceedings, meaning that there has not been factual development in some other court. As such, the merits of §2255 often cannot be assessed without some factual development, as this Court's precedent recognizes. *See, e.g.*, *Huff*, 734 F.3d at 602. That is certainly true in capital cases, where the claims frequently focus on out-of-court events and investigations not undertaken.

outside trial counsel's files. Trial counsel's and expert's files reveal only limited pieces of information: what was committed to writing by certain people. They do not include records that trial counsel failed to collect, records in possession of the prosecution and law enforcement agencies, or recollections that trial counsel did not (for whatever reason) commit to writing. As such, trial counsel's files may reveal certain basic facts, like what materials trial counsel actually had, but often fail to explain why certain decisions were made, such as why certain records were not obtained or certain witnesses not interviewed. That is, trial counsel's files may tell post-conviction counsel what questions need to be asked, but trial counsel's files cannot answer all of the questions relevant to post-conviction proceedings.

The government's argument regarding Chief Judge Jonker's findings about Roach's testimony are particularly disconcerting. First, the government points out that "it is not clear that Roach purposefully 'lied.'" Resp. at 120. As Gabrion has argued repeatedly, this uncertainty is precisely why a hearing is necessary. Even more troubling, the government characterizes Roach's testimony about preliminary examinations as "minor procedural details." *Id.* The government used the testimony to support its argument as to Gabrion's motive for the murder: to avoid his trial on state rape charges.[11] Roach's testimony was crucial evidence that the

_____

[11] On direct appeal, this Court, sitting *en banc*, opened the majority opinion as follows:

31

government used to support the aggravating factors of obstruction of justice and substantial planning and premeditation. Roach's testimony allowed prosecutors to make a strong case that Gabrion was able to thwart an entire system of justice and for that reason had to be put to death. 03/15-16/2002 Sent. Tr. Vol. V, 608.

Beyond denying Gabrion an opportunity to factually develop his claims, Chief Judge Jonker also denied even the most basic of Gabrion's requests, including refusing to order that an expert psychiatrist be allowed to see Gabrion. *See* R. 155, Mot. for Order Authorizing Visit, PageID 5780; R. 156, Op., Page ID 5997. He also refused to order the BOP to provide Gabrion's medical and mental health records to counsel, even denying counsel's request to seal the motion seeking these records. R. 124, Mot. for Release of Medical Records, PageID 5345; R. 125, Order, PageID 5353.

"In no proceeding is the need for an impartial judge more acute than one that may end in death." *In re Al-Nashiri*, 921 F.3d 224, 239 (D.C. Cir. 2019).

---

Marvin Gabrion was scheduled to be tried in Michigan state court for a rape charge on June 5, 1997. But that trial never happened. Two days before the trial was set to begin, Gabrion abducted Rachel Timmerman—the 19-year-old woman he allegedly raped—and took her to a remote location in the Manistee National Forest, bound and gagged her and weighed her down with concrete blocks, put her in an old metal boat, and then threw her overboard, alive, into a shallow, weedy lake, where she drowned. Gabrion also abducted and killed Timmerman's infant daughter.

*United States v. Gabrion*, 719 F.3d 511, 515 (6th Cir. 2013) (*en banc*).

Particularly in light of the acute need for impartiality in death penalty cases, in this case, this court's three-factor test requires assigning a new judge. *See Rorrer*, 743 F.3d at 1049. Chief Judge Jonker, who is the fact-finder Gabrion's in §2255 proceedings, has demonstrated that he would have "substantial difficulty in putting out of his . . . mind previously expressed views or findings" by already speculating about things that may have happened, or what trial counsel's strategy might have been in order to deny all process in this capital case. *Id.* For the same reason, "reassignment is advisable to preserve the appearance of justice." *Id.*

While the government asserts that Gabrion has provided no examples of Chief Judge Jonker's hostility toward him, Gabrion in fact provided a multitude of such examples. *See* Opening Br. at 97-111.

And while there would be some duplication of efforts, because the district court did not preside over the initial trial proceedings and refused to hold a hearing or authorize factual development in the §2255 proceedings, reassignment would not "entail waste and duplication out of proportion to any gain in preserving the appearance of fairness." *Rorrer*, 743 F.3d at 1049. In *Al-Nashiri*, approximately 460 orders and many oral rulings from the bench were vacated. *Al-Nashiri*, 921 F.3d at 238, 241. Nonetheless, "the public's interest in efficient justice is no greater than its interest in impartial justice." *Id.* at 240. In sum, the factors weigh in favor of reassignment and, on remand, this case should be assigned to a new judge.

**V.** **This Court's standard for an evidentiary hearing and discovery is light even in non-capital cases, and allowing factual development is especially critical in death penalty cases.**

As discussed above, this Court's standards for a hearing and discovery recognize the importance of sufficient process even in non-capital §2255 cases. Here, the stakes are life or death. The district court's refusal to hold a hearing or allow Gabrion to conduct discovery risks affirming a conviction and death sentence that were actually unconstitutionally secured. There is no better example of this risk than the case the government cites as a purported example of why factual development is not necessary, *United States v. Webster*. Denying Webster's §2255 without a hearing or discovery likely would have led to the unconstitutional execution of an intellectually disabled man—and, on the other side of that coin, having a hearing and discovery in §2255 proceedings may well have saved years of post-§2255 litigation. This Court's precedent creates a light standard for evidentiary hearings and discovery in §2255 cases, and *Webster* is a poignant example of why district courts should certainly be required to follow that standard in federal capital cases. This Court should follow its own clear precedent, and the example of courts like the Tenth Circuit in *United States v. Barrett*, which emphasize the importance of hearings in capital §2255 proceedings. Following its own precedent, this Court should not allow Gabrion's §2255 motion to be denied without a hearing or discovery. This is not a review of a death sentence in §2254

proceedings where factual development was allowed in some other (state) court. Gabrion must rely on this Court—and this Court only—to afford the process he is due.

## CONCLUSION

Gabrion has presented evidence that at least warrants an evidentiary hearing and discovery. Therefore, this Court should, at minimum, remand this case with instructions to authorize discovery and hold an evidentiary hearing.

**Date:  February 18, 2022**                          **Respectfully submitted,**

By:  /s/ *Monica Foster*                          By:  /s/ *Joseph M. Cleary*
    Monica Foster                              Joseph M. Cleary
    Jean E. Giles                              Attorney for Petitioner-Appellant
    Attorneys for Petitioner-Appellant    Business Address:
Business Address:                              Indiana Federal Community
    Indiana Federal Community                  Defenders, Inc.
    Defenders, Inc.                            111 Monument Circle, Suite 3200
    111 Monument Circle, Suite 3200            Indianapolis, Indiana 46204
    Indianapolis, Indiana 46204                Telephone: (317) 383-3520
    Telephone: (317) 383-3520                  Email:  Joe_Cleary@fd.org
    Email: Monica_Foster@fd.org
    Email: Jean_Giles@fd.org

By:  /s/ *Scott Graham*
    Scott Graham
    Attorney for Petitioner-Appellant
Business Address:
    SCOTT GRAHAM PLLC
    1911 West Centre Avenue, Suite C
    Portage, Michigan 49024
    Telephone: (269) 327-0585
    Email: sgraham@scottgahampllc.com

# CERTIFICATE OF COMPLIANCE

In accordance with Federal Rules of Appellate Procedure 28(a)(10), 32(a)(7)(B), and 32(g)(1), and Sixth Circuit Rule 32(a), Undersigned counsel certifies that this brief contains 8,659 words, as counted using Microsoft Word's (version 16.36) word-count function. *See* Fed. R. App. P. 32(g)(1).

**SCOTT GRAHAM PLLC**

Date: February 18, 2022      By:    /s/ Scott Graham
                                       Scott Graham
                                       Attorney for Petitioner-Appellant
                                       1911 West Centre Avenue, Suite C
                                       Portage, Michigan 49024-5399
                                       (269) 327-0585
                                       sgraham@scottgrahampllc.com

# CERTIFICATE OF SERVICE

Undersigned counsel certifies that he filed the Petitioner-Appellant's Reply Brief through the Court's CM/ECF electronic system on February 18, 2022, See Fed. R. App. P. 25(d)(1)(B); 6 Cir. R. 25(f)(2). Notice of this filing will be sent through the CM/ECF system to all parties indicated on the electronic filing receipt, namely Assistant United States Attorney Jennifer L. McManus and Assistant United States Attorney Timothy P. VerHey. Parties may access this filing through the CM/ECF system.

**SCOTT GRAHAM PLLC**

Date: February 18, 2022      By:    /s/ Scott Graham

                Scott Graham
Attorney for Petitioner-Appellant
1911 West Centre Avenue, Suite C
Portage, Michigan 49024-5399
(269) 327-0585
sgraham@scottgrahampllc.com

**PETITIONER-APPELLANT'S DESIGNATION OF RECORD**

In accordance with this Circuit's Rules 28(b)(1)(A)(i) and 30(g)(1), Mr. Gabrion included in his principal brief a designation of relevant documents from the trial court. No further designation of records is needed here.